# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

TAMMY RANGEL,

    Plaintiff,

v.

PAUL ANDERSON,

    Defendant.

CIVIL ACTION NO.: 2:15-cv-81

## **O R D E R**

This matter comes before the Court on Defendant's and Plaintiff's Motions in Limine. (Docs. 34, 53.) The Court held a hearing on these Motions on August 10, 2016. For the reasons stated below, the Court **GRANTS** Defendant's Motion, (doc. 34), and **DENIES** Plaintiff's Motion, (doc. 53).

## BACKGROUND

This case arises out of a motor vehicle accident that occurred in Baxley, Georgia, on February 12, 2015. (Doc. 1, p. 2.) Plaintiff alleges that Defendant's vehicle rear-ended her vehicle, causing her injuries. (Id.) Following the accident, several physicians treated Plaintiff for neck and back pain, including Dr. Patrick Karl, ("Dr. Karl"), a pain management specialist. Although the deadline to disclose testifying experts was November 10, 2015, Plaintiff did not identify Dr. Karl as an expert witness by that date. Further, Plaintiff did not provide a written report of Dr. Karl's opinion. Relevant to the present Motions, Key Health, a medical lien company, funded Plaintiff's treatment by Dr. Karl and other physicians. (Doc. 53, p. 2.)

**DISCUSSION**

I.  **Defendant's Motion in Limine (Doc. 34)**

Defendant urges the Court to exclude certain opinions of Dr. Karl and Dr. Evelyn Johnson, Plaintiff's primary care physician. Defendant agreed at the hearing that these doctors could provide factual testimony regarding their treatment of Plaintiff. However, Defendant seeks to prevent these physicians from offering opinion testimony based upon Plaintiff's failure to properly disclose them as experts and failure to provide written expert reports in accordance with Federal Rule of Civil Procedure 26(a)(2)(A)-(B). Defendant further contends that the opinions of Dr. Karl and Dr. Johnson fail to meet the reliability standards established by <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). At the hearing, Plaintiff agreed that she will not present Dr. Johnson as an expert witness at trial. Accordingly, the Court **GRANTS** as unopposed Defendant's Motion with regards to Dr. Johnson. The Court will, therefore, only address Defendant's Motion as it pertains to Dr. Karl.

**A. Failure to Disclose Expert's Identity & Failure to Provide Written Report**

"A party must disclose to other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(A). In addition, Rule 26(a)(2)(B) further dictates "this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

>   (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> 
>   (ii) the data or other information considered by the witness in forming them;
> 
>   (iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous ten years;

(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case."

In comparison, a 2010 amendment to the Federal Rules established a separate reporting classification in Rule 26(a)(2)(C) for witnesses who will testify as fact witnesses as well as offer expert opinions, a category into which treating physician experts often fall. While such witnesses need not provide the report required by Rule 26(a)(2)(B), they are still required to disclose the subject(s) of their expert testimony, as well as a summary of the facts and opinions on which they are expected to testify. Treating physicians not disclosed as experts are limited to testimony based on personal knowledge and may not testify beyond their treatment of a patient. Kondraugunta v. Ace Doran Hauling & Rigging Co., No. 1:11-cv-01094, 2013 WL 1189493 (N.D. Ga. Mar. 21, 2013).

The following excerpt explains the rationale and impact of Rule 26(a)(2)(C) as to treating physicians, and this interpretation has been echoed by many courts:

> [T]he disclosures that must be made for a treating physician depend on the nature of the testimony he or she will give. Unless the treating physician is going to be limited to testifying about facts in a lay person capacity, the physician must be disclosed as an expert and must provide either the summary disclosures or an expert report. Whether the treating physician must file a written report or is subject only to summary disclosures depends on the role of the expert. If the treating physician's expert opinions stay within the scope of treatment and diagnosis, then the physician would not be considered "retained" to provide expert testimony and only summary disclosures would be needed. But if a treating physician is going to offer opinions formed outside the course of treatment and diagnosis, then as to those further opinions the physician is being used in a "retained expert" role and the Rule 26(a)(2)(B)'s report requirement will apply to the extent of that further testimony. It is not sufficient for the summary

> disclosures to mention that the treating physician is going to offer these additional expert opinions.
>
> The types of disclosures made will then determine the scope of testimony actually allowed. Treating physicians disclosed only as lay witnesses may testify only to lay facts. Treating physicians for whom summary disclosures are provided may opine on matters relating to treatment and diagnosis. If the treating physician files an expert report, then the treating physician may testify as a retained expert to matters that go beyond treatment and diagnosis.

Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 26; see also, In Re Denture Cream Prods. Liab. Litig., No. 09–2051–MD, 2012 WL 5199597, *4 (S.D. Fla. Oct. 22, 2012) (holding that "label of 'treating physician' is irrelevant; instead, the determination turns on the substance of the physician's testimony" and concluding that, because the witnesses were testifying as to causation, their "title 'treating physicians' does not carry the day," and they were required to provide full Subsection B reports).

Though Plaintiff did not provide an expert disclosure, much less a written report containing Dr. Karl's expert opinions, Dr. Karl offered several expert opinions during his deposition. Dr. Karl opined that (1) it is more probable than not that Plaintiff has a nerve root impingement in her cervical spine; (2) it is more likely than not that the February 2015 accident caused an acute injury to Plaintiff's cervical region; (3) it is possible that the February 2015 accident aggravated pre-existing degenerative changes in Plaintiff's neck; and (4) it is more likely than not that the February 2015 accident exacerbated Plaintiff's pre-existing neck problems and caused Plaintiff's back pain. (Doc. 34-2, pp. 14–17.) Defendant argues that Dr. Karl's opinions regarding the cause of Plaintiff's injuries involve knowledge beyond that of an ordinary juror and, therefore, require an expert report. (Doc. 34-1, p. 6.) Because Plaintiff did not disclose Dr. Karl as an expert witness, much less provide a written expert report containing

his opinions by the November 15, 2015 deadline, Defendant contends this evidence must be excluded. (Id. at pp. 5–6.)

Plaintiff concedes that she provided neither the written expert report required by Rule 26(a)(2)(B), nor the written disclosure on the subject of Dr. Karl's expert testimony. (Doc. 42, p. 3.) Plaintiff further concedes that she failed to provide a summary of facts and opinions on which Dr. Karl is expected to testify, as required by Rule 26(a)(2)(C). (Id. at p. 5.) However, Plaintiff maintains that the Court should, nevertheless, allow Dr. Karl to offer an expert opinion, because her failure to disclose was harmless. Thus, it is undisputed that Plaintiff did not comply with Rule 26's disclosure requirements as to Dr. Karl.[1]

"A court may exclude affidavits or testimony from a witness when 'a party fails to provide information or identify a witness as required by Rule 26(a).'" Kondragunta, 2013 WL 1189493, at *7 (citing Fed. R. Civ. P. 37(c)(1)). "However, a court does not have to impose those sanctions if it believes the failure was 'substantially justified or is harmless.'" Id. "In the past, other judges . . . have applied a five-factor test when determining whether an insufficient disclosure is harmless." Id. (citing Bruce v. Classic Carrier, Inc., No. 1:11-cv-01472–JEC–JCF, 2012 WL 12835705, at *3 (N.D. Ga. Oct. 31, 2012) (citing Cambridge Univ. Press v. Becker, 1:08–cv–1425–ODE, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010))). These factors are:

---

[1] At the least, Plaintiff was required to comply with Rule 26(a)(2)(C)(ii). Simply supplying Defendant with all of her medical records is insufficient to show compliance with this disclosure requirement. Kondragunta, No. 1:11-CV-01094-JEC, 2013 WL 1189493, at *6 ("Further, the fact that plaintiff provided all his medical records to the defendants does not mean that plaintiff has fulfilled the 'summary of the facts and opinions' prong of Rule 26(a)(2)(C). Allowing medical records to be submitted 'in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.'") (quoting Ballinger v. Casey's Gen. Store, Inc., No. 1:10–cv–1439–JMS–TAB, 2012 WL 1099823, at *4 (S.D. Ind. Mar. 29, 2012)). Moreover, because Plaintiff intends to ask Dr. Karl to offer opinions outside of the scope of his treatment, Plaintiff should have complied with the more robust disclosure requirements of Rule 26(a)(2)(B).

5

(1) the surprise to the party against whom the evidence would be offered;

(2) the ability of that party to cure the surprise;

(3) the extent to which allowing the evidence would disrupt the trial;

(4) the importance of the evidence; and

(5) the nondisclosing party's explanation for its failure to disclose the evidence.

Cambridge Univ. Press, 2010 WL 6067575, at *3.

Plaintiff contends that Dr. Karl's testimony could come as no surprise to Defendants, as Plaintiff identified Dr. Karl as her treating physician during her own November 2015 deposition. As to the second factor, Plaintiff contends that Defendant had ample opportunity to cure any surprise during Dr. Karl's deposition on March 11, 2016. (Doc. 42, p. 7.) As to the third factor, Plaintiff argues that allowing Dr. Karl's testimony at trial would not be disruptive, as Defendant has several months to prepare for trial. (Id.) As to the fourth factor, Plaintiff argues that Dr. Karl's testimony is critical to Plaintiff's claim because it speaks directly to causation. (Id.) Finally, as to the fifth factor, Plaintiff explains that, prior to the deadline for disclosing her expert witnesses, Dr. Karl had treated Plaintiff only two times. (Id.) Plaintiff contends that, at that time, it was unknown whether Dr. Karl would continue to treat Plaintiff or would provide any expert opinion regarding her injuries. (Id.)

It is not enough for Plaintiff to argue that Defendant should not be surprised by Dr. Karl's expert opinion because he was listed as a treating physician. Defendant had no notice prior to Dr. Karl's deposition that he would provide any opinions in this case, much less opinions regarding causation and the additional issues discussed by Dr. Karl. Indeed, Plaintiff's counsel stated at the Motions hearing that she only realized that Dr. Karl could act as a causation expert at the deposition. Prior to that deposition, Plaintiff had not provided any disclosure regarding Dr.

Karl and, thus, had not even hinted that Dr. Karl would testify about anything other than the facts regarding his treatment of Plaintiff. This surprise defeats the purpose of Rule 26's expert disclosure requirements. Moreover, with no notice of Dr. Karl's opinions, much less the subject matter of them, Defendant could not have prepared to depose Dr. Karl on those issues. <u>Goodbys Creek, LLC v. Arch Ins. Co.</u>, No. 3:07-CV-947-J-34HTS, 2009 WL 1139575, at *3 (M.D. Fla. Apr. 27, 2009) ("[E]ven if a deposition of every expert were taken by Defendant as a matter of course, furnishing it with a woefully inadequate report adversely impacts upon its ability to prepare for and conduct the deposition.").

As to the ability to cure the surprise, Defendant had no prior knowledge that Dr. Karl would serve as an expert, and, therefore, Defendant should not have been expected to obtain the required Rule 26 information at the deposition. Indeed, allowing parties to obviate the need to provide Rule 26(a)(2) disclosures and reports by simply making their experts available to be deposed would render the Rule meaningless. Moreover, Defendant is still in the dark as to much of the information required by Rule 26 because Plaintiff still has not provided an expert disclosure.

Additionally, as Defendant has pointed out, Dr. Karl's opinions, including his level of certainty and the underlying bases for them, varied during his deposition and through his recently filed affidavit. At the hearing, Plaintiff explained that Dr. Karl did not speak in terms of a typically prepared expert because he is a treating physician and not a retained expert. Regardless, Defendant was entitled to depose Dr. Karl on his expert opinions if Plaintiff intends to present Dr. Karl's analyses as an expert opinion. It would be unfair for Plaintiff to now remedy deficiencies and variances in Dr. Karl's opinions by providing an expert report at this late date.

Furthermore, allowing Plaintiff to cure her failure and provide an expert disclosure at this stage would disrupt the discovery process and this litigation. For instance, Dr. Karl could change his opinions and his basis for them in order to skirt the Defendants' Daubert challenge. Additionally, Defendant may request additional time to have one of its experts provide opinions rebutting Dr. Karl's opinions. Rule 26 and this Court's scheduling orders seek to avoid such disruption in the orderly flow of litigation. See Rogers v. Hartford Life and Acc. Ins. Co., 2012 WL 2395194, at *1 n.3 (S.D. Ala. June 22, 2012) ("[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded. . . . Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.") (quoting B.T. ex rel. Mary T. v. Department of Educ., State of Hawaii, 637 F. Supp. 2d 856, 867 (D. Haw. 2009)).

Plaintiff has failed to establish that Dr. Karl's opinions are so important that the Court should excuse her failure to provide an expert report. At the hearing, Plaintiff and Defendant agreed that Plaintiff could provide evidence of causation using her medical records and other witnesses. Additionally, Defendant agreed that Dr. Karl could testify regarding the facts of his treatment of Plaintiff.

Plaintiff's justification for not providing a report for Dr. Karl also does not excuse her failure to disclose. Plaintiff contends that she did not provide an expert report for Dr. Karl because he had only seen Plaintiff on two occasions before the expert disclosure deadline. However, when Plaintiff filed this case, months before the expert disclosure deadline, she was aware that she would need to provide medical evidence of her injuries and causation.[2]

---

[2] Plaintiff's counsel pointed out at the Motions Hearing that Plaintiff should not be required to provide an expert witness report as to every one of her treating physicians. However, as the above discussion regarding Rule 26(a)(2)(B) and (C) demonstrates, parties have an affirmative duty to identify those treating physicians from whom they intend to elicit expert opinions. Furthermore, while the Court is

Furthermore, Plaintiff saw Dr. Karl on several more occasions before his deposition. Plaintiff should have been aware of the potential for Dr. Karl to provide expert testimony at least prior to that deposition. Indeed, Plaintiff's counsel elicited expert opinions from Dr. Karl during the deposition. However, to date, Plaintiff has still not provided any expert disclosures regarding Dr. Karl.[3]

For all of these reasons, Rules 26 and 37 compel the Court to prevent Dr. Karl from providing any opinion testimony during the trial of this case. Consequently, the Court limits Dr. Karl's testimony to only the facts of this case. Additionally, as discussed below, even if Rule 37 does not require exclusion of Dr. Karl's opinion testimony, the reliability criterion established by Daubert would still render the evidence inadmissible.

**B. Daubert**

In Daubert, the U.S. Supreme Court interpreted Federal Rule of Evidence 702 ("Rule 702"), which governs expert testimony. The Supreme Court stated that Rule 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert *scientific* evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing Daubert, 509 U.S. at 589 n.7, 597). The Supreme Court later held that "Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation— applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137,

---

sensitive to the burden placed on Plaintiff's counsel, it must also be cognizant of the burden placed on Defendant's counsel to decipher which of Plaintiff's many treating physicians she intends to offer as experts.

[3] Parties must supplement disclosures or discovery responses when they learn that a prior response was incomplete or incorrect and the additional or corrective information was not otherwise known to the other parties during the discovery process. Fed. R. Civ. P. 26(e)(1)(A). With respect to expert witnesses, the duty to supplement extends both to information included in the report and to information given during the expert's deposition. Fed. R. Civ. P. 26(e)(2).

141 (1999) (citing Fed. R. Evid. 702). Having adopted these decisions, amended Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court of Appeals for the Eleventh Circuit has set forth a three-prong inquiry encompassing the requirements of Daubert and its progeny, and Rule 702. Under the three-prong inquiry, a court determining the admissibility of expert testimony must consider whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citations omitted). The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. Daubert, 509 U.S. at 592, n.10.

For the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Id. at 1260–61; see also Fed. R. Evid. 702 (A witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]"). The reliability "criterion remains a discrete, independent, and important requirement for admissibility." Frazier, 387 F.3d at 1261. The Supreme Court in Daubert "set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." United States

v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted).  These factors or observations inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." Id. (citation omitted).  "Sometimes the specific Daubert factors will aid in determining reliability; sometimes other questions may be more useful. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Frazier, 387 F.3d at 1261.  Lastly, expert opinion testimony must assist the trier of fact. Id.  "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Id. (citation omitted).

### 1. Whether Dr. Karl's Opinions 1, 2, and 4 are Based Upon Sufficient Facts & Data

Defendant argues that Dr. Karl's opinions that (1) it is more probable than not that Plaintiff has nerve root impingement in her cervical spine, (2) it is more likely than not that the February 2015 accident caused an acute injury to Plaintiff's cervical region, and (4) it is more likely than not that the February 2015 accident exacerbated Plaintiff's pre-existing neck problems and caused Plaintiff's back pain,[4] are not based upon sufficient facts and data.  Defendant maintains this argument because Dr. Karl reviewed only Plaintiff's radiology reports in reaching these conclusions and failed to consider a previous car accident in which Plaintiff sustained injuries.  (Doc. 34-1, p. 9.)  Specifically, as to Opinion (1), Defendant maintains that

---

[4] Because the parties refer to these opinions as nos. (1), (2), and (4), the Court will group these particular opinions out of numerical order for the sake of consistency.

11

Dr. Karl failed to review Plaintiff's x-rays, CT scans, and MRI films before reaching his conclusion. As to Opinion (2), Defendant argues that Dr. Karl's opinion that the February 2015 accident caused Plaintiff's cervical injuries is unreliable because he failed to review diagnostic studies performed on Plaintiff prior to the February 2015 accident. Defendant notes that, while Plaintiff received injuries from a prior car accident in 2014, Dr. Karl did not determine whether Plaintiff's current injury existed prior to the February 2015 car accident. Finally, Defendant argues that Dr. Karl's opinion (4) that it is more likely than not that the February 2015 accident exacerbated Plaintiff's pre-existing neck problems and caused Plaintiff's back pain should be excluded because it is based upon an improper assumption that Plaintiff had suffered no trauma to her neck or back prior to the February 2015 accident.

As discussed above, Federal Rule of Evidence 702 requires that expert testimony be based upon sufficient facts or data. Here, the facts and data relied upon by Dr. Karl in reaching his conclusions that (1) Plaintiff has nerve root impingement, (2) the February 2015 accident caused an acute injury to Plaintiff's cervical region, and (4) the February 2015 accident exacerbated Plaintiff's neck and back injuries include radiology reports, Plaintiff's testimony, Dr. Karl's treatment and evaluation of Plaintiff, and Dr. Karl's education and training. (Doc. 42, p. 11.) The Eleventh Circuit recently held that an expert's reliance on data more voluminous than that relied upon by Dr. Karl was insufficient to meet the Daubert standard of reliability. In Cooper v. Marten Transport Ltd., 539 F. App'x 963, 966 (11th. Cir. 2013), plaintiffs alleged that they sustained back injuries as a result of a 2010 car accident with the defendant driver. Prior to that accident, plaintiffs suffered from degenerative back conditions compounded by a previous car accident which occurred in 2009. Id. The Eleventh Circuit found that plaintiffs' treating physicians' opinions that the 2010 crash caused plaintiffs' back injuries were not based upon

sufficient facts or data, despite the treating physicians' reliance on nerve studies, x-rays, discograms, and other diagnostic tests in reaching those conclusions. Id.

Here, like the plaintiffs in Cooper, Plaintiff similarly suffered from pre-existing degenerative neck and back injuries and was involved in a prior car accident. However, Plaintiff's treating physician, Dr. Karl, relied on even fewer sources to reach his conclusion that Plaintiff has nerve root impingement, that Plaintiff's cervical injuries were caused by the February 2015 car accident, and that the February 2015 accident exacerbated Plaintiff's preexisting neck and back injuries. Whereas the treating physicians in Cooper examined those plaintiffs' nerve studies, x-rays, discograms, and other diagnostic tests before reaching their conclusions, Dr. Karl reviewed only Plaintiffs' radiology reports. Dr. Karl's additional reliance upon (1) his treatment and observation of Plaintiff, (2) Plaintiff's testimony, and (3) Dr. Karl's own expertise does not remedy the insufficient bases of Dr. Karl's opinion. The Eleventh Circuit held in Cooper that, although that expert witness similarly relied upon those plaintiffs' physical examinations and medical histories, the expert opinions were still unreliable under Daubert. Id. at 967. Accordingly, Dr. Karl's conclusions that Plaintiff suffers from nerve root impingement, that her cervical injuries were caused by the February 2015 accident, and that the February 2015 accident exacerbated her prior neck and back injuries are not based upon sufficient facts or data and, therefore, are not sufficiently reliable. See Cooper, 539 F. App'x at 967 (finding that the opinions of plaintiffs' treating doctors were unreliable because they "simply conducted physical examinations and reviewed the Coopers' medical histories to arrive at the[ir] conclusion that the 2010 collision caused the Coopers' injuries" (citing Kilpatrick, 613 F.3d 1329, 1342 (11th Cir. 2010), and Hendrix v. Evenflo Co., Inc., 609 F.3d 1183, 1197 (11th Cir. 2010) (indicating that "an expert must provide reasons for rejecting alternative hypotheses using scientific methods and

procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation" (quotation omitted))).

**2. Whether Dr. Karl's Opinion 3 is Sufficiently Reliable and Will Assist the Jury**

Next, Defendant argues that Dr. Karl's opinion that it is "possible" that the February 2015 accident aggravated pre-existing degenerative changes in Plaintiff's neck fails to meet the Daubert standard of reliability, as it is not expressed to a reasonable degree of medical certainty. Plaintiff responds that Dr. Karl also testified that it is "likely" that the wreck exacerbated Plaintiff's previous degenerative conditions and made them more severe, and that this articulation satisfied the Daubert standard of reliability.

Expert testimony is inadmissible unless a competent expert testifies "to a reasonable degree of medical certainty" that a given event caused the plaintiff's injuries. Wheeler v. Novartis Pharmaceuticals Corp., 944 F. Supp. 2d 1344, 1352 (S.D. Ga. 2013) (citing Allison v. McGhan Medical Corp., 184 F.3d 1300, 1320 (11th Cir. 1999)). "In presenting an opinion on causation," Georgia law requires that "[an] expert . . . express some basis for both the confidence with which his conclusion is formed, and the probability that his conclusion is accurate." Zwiren v. Thompson, 578 S.E.2d 862 (Ga. 2003).[5] The Georgia Supreme Court has held that "if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment." Id. While Georgia law does not require that experts specifically state their opinions to "a reasonable degree of medical certainty . . . an

---

[5] In this action based upon diversity, "Georgia substantive standards of law must apply." Allison, 184 F.3d at 1320 (finding that District Court's consideration of Georgia's rule requiring that expert's opinion be stated to a reasonable degree of medical or scientific certainty was proper and noting that "[f]ailure to meet this burden means that the sole causation expert's opinion would [be inadmissible] . . . under Rule 702[.]")). Thus, it is proper for this federal court to look at Georgia's causation standards to assess whether the expert's opinion on causation would be helpful to assist the jury. Id.

expert" must, at a minimum, "state an opinion regarding proximate causation in terms stronger than that of medical possibility." Id. Accordingly, to assist the trier of fact under Rule 702, Dr. Karl's opinion as to causation must have been stated in terms stronger than that of a medical possibility. Allison, 184 F.3d at 1320 ("[C]ausation expert's opinion would not assist the trier of fact under Rule 702 because his degree of certainty would not be sufficient to establish probable cause and would thus be irrelevant.")

Here, Dr. Karl stated his opinion regarding the cause of Plaintiff's injuries in varying terms. Dr. Karl first stated that it was "possible" that "the accident . . . exacerbated [Plaintiff's] preexisting degenerative conditions," (doc. 34-2, p. 15), and then stated that "it is likely that the accident . . . exacerbated [Plaintiff's] chronic degenerative changes making them more severe and possibly symptomatic," (doc. 42-1, p. 42). Dr. Karl's interchangeable use of the terms "possible" and "likely" and the imprecise manner in which Dr. Karl expressed his opinion highlights his lack of certainty as to the cause of Plaintiff's injury. Therefore, based upon the testimony before the Court, Dr. Karl has not stated his opinion in terms greater than that of a medical possibility, much less to "a reasonable degree of medical certainty." Accordingly, Dr. Karl's testimony fails to satisfy the reliability standards established by Daubert and fails to assist the trier of fact under Rule 702.

## II. Plaintiff's Motion in Limine

In her Motion in Limine, Plaintiff requests that the Court prohibit Defendant from offering evidence referencing Key Health, a medical lien funding company which has paid for Plaintiff's medical treatment. (Doc. 53, p. 2.) Plaintiff contends that this evidence is barred by the "collateral source" rule and is, therefore, inadmissible. (Id.) Defendant first contends that Key Health is not a collateral source and, therefore, evidence of Key Health's financial

contribution to Plaintiff's medical treatment is not barred by the collateral source rule. Defendant argues in the alternative that, even if Key Health qualifies as a collateral source, Key Health's payment of Plaintiff's medical treatments and its pecuniary interest in the lawsuit is admissible to attack the credibility of Plaintiff's treating physicians.

In Georgia, the collateral source rule "bars the defendant from presenting any evidence as to payments of expenses of a tortious injury paid for by a third party and taking any credit toward the defendant's liability and damages for such payments." Kelley v. Purcell, 686 S.E.2d 879, 882 (Ga. Ct. App. 2009) (quoting Hoeflick v. Bradley, 637 S.E.2d 832 (Ga. App. 2006)).[6] Accordingly, the rule "permits an injured party to recover damages from a defendant notwithstanding that the plaintiff received compensation [for his or her injuries] from other sources. Bennett v. Haley, 208 S.E.2d 302, 310 (Ga. Ct. App. 1974). The underlying rationale for this rule is that "a tortfeasor is not allowed to benefit by its wrongful conduct or to mitigate

---

[6] A federal court typically determines questions of admissibility of evidence using federal law even in cases, such as this one, where the Court hears the case under its diversity jurisdiction. Heath v. Suzuki Motor Corp., 126 F.3d 1391, 1396 (11th Cir. 1997) ("Under this circuit's controlling precedent regarding diversity jurisdiction cases, the admissibility of evidence is a procedural issue, and therefore [it] is governed by the Federal Rules of Evidence."). However, some courts have held that where evidence implicates a substantive state law, including the collateral source rule, the federal court should apply state law. See Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998) ("Nevertheless, it is well recognized that Congress did not intend the procedural rules to preempt the so-called 'substantive' state rules of evidence, such as the parol evidence rule, the collateral source rule, or the statute of frauds; although the application of these rules will affect the admissibility of some evidence, they in reality serve substantive state policies regulating private transactions."); McCammond v. Schwan's Home Serv., Inc., 791 F. Supp. 2d 1010, 1011 (D. Colo. 2011) ("Because the instant Motion involves application of the collateral source rule, the Court must apply the relevant state law."). However, at least one Circuit Court has held that the admissibility of collateral source evidence should be assessed under Federal Rules of Evidence 401, 402, and 403. Fitzgerald v. Expressway Sewerage Const., Inc., 177 F.3d 71, 74 (1st Cir. 1999) ([The state law] collateral source rule must be given full credit in this case *as a rule of damages*. The evidentiary implications flowing from that rule, however, are governed by the Federal Rules of Evidence. Thus, we . . . proceed to examine the challenged ruling through a federal prism."). It appears that in this Circuit, evidentiary questions involving the collateral source rule in diversity cases should be answered using the substantive law of the state. See Southern v. Plumb Tools, a Division of O'Ames Corp., 696 F.2d 1321, 1323 (11th Cir. 1983). Regardless, in this case, the parties do not dispute that the Court should apply Georgia's collateral source rule to their evidentiary arguments. Thus, the Court need not conduct a choice of law analysis. Moreover, the Court's analysis would be the same under Georgia and federal law.

16

its liability by collateral sources provided by others." Kelley, 686 S.E.2d at 882. Nevertheless, "there may be another issue in a case to which evidence of collateral benefits is material." Polito v. Holland, 365 S.E.2d 273, 274 (Ga. 1988). "It is in the trial court's discretion to weigh the effect of the collateral source evidence before ruling on its admissibility."

Another court in this Circuit recently held that a medical lien funding company "is not . . . a traditional collateral source," as that entity "serves as an investor in the lawsuit and receives no payment from the Plaintiff until after the lawsuit." Houston v. Publix Supermarkets, Inc., No. 1:13-CV-206-TWT, 2015 WL 4581541, at *2 (N.D. Ga. July 29. 2015). That court further noted that, if a defendant "[does] not seek to offer evidence of the relationships between [the medical lien funding company] and the [plaintiff] and [the medial lien funding company] and the [p]laintiff's doctors in order to reduce its liability, but rather to attack the credibility of the [p]laintiff's experts," that evidence is admissible as it is "highly relevant and probative" to the issue of plaintiff's expert's credibility. Id.

Similarly in this case, Key Health, a medical lien funding company, is not a traditional collateral source. Key Health has not paid or even reduced Plaintiff's medical bills. Rather, Key Health has essentially fronted Plaintiff the money for her treatment, and then Key Health intends to recover that money from Plaintiff after the lawsuit. Thus, unlike an insurance company, Key Health's payments do not reduce Plaintiff's financial obligations. Indeed, Defendant pointed out at the Motions Hearing that one of the bills Plaintiff seeks to introduce to prove her damages is a bill from Key Health. Likewise, Plaintiff pointed out that, if she loses at trial, she still owes Key Health for the costs of her treatment.

Consequently, Defendant is not attempting to take any credit towards his liability or to reduce the damages he may owe Plaintiff due to Key Health's payments. Unlike with an insurance company or other collateral source, there is not a risk that the jury will reduce Plaintiff's damages by the amounts paid by Key Health. Rather, Plaintiff may tell the jury that she still owes Key Health for the full costs of any payments that it has agreed to make on her behalf.[7] Thus, excluding any evidence regarding Key Health would not serve the underlying rationale of the collateral source rule.

Furthermore, Key Health's involvement in Plaintiff's treatment is highly relevant to the issue of Plaintiff's treating physicians' credibility and potential bias. As Judge Thrash pointed out in Houston, a medical lien funder is an investor in its client's lawsuit. If Plaintiff receives a large verdict amount, then Key Health has a near certain chance of fully and quickly recovering the money it has fronted Plaintiff. On the other hand, if Plaintiff does not recover at trial, Key Health's chances of being reimbursed are doubtful at best. Added to this arrangement is the fact that Key Health referred Plaintiff to many of her treating physicians, including Dr. Karl. These physicians have a patent financial interest in receiving more case referrals from Key Health. If Plaintiff is awarded a recovery, then Key Health would arguably be more inclined to refer cases to those physicians in the future. Thus, the physicians have a financial motivation to testify favorably for Plaintiff. Consequently, the jury should consider the relationships between Plaintiff, Key Health, and Plaintiff's physicians when assessing the credibility of Plaintiff's physicians' testimony.

---

[7] This relationship is easily distinguished from that of an insured plaintiff and her insurer. There, the insurers' payments reduce the insured plaintiff's actual expenses and obligations. In that situation, there exists a great danger that the jury will reduce its verdict to only cover the insured plaintiff's "out of pocket" expenses. Here, because Key Health has not caused a reduction in Plaintiff's expenses and obligations, there is no danger that the jury will make a corresponding reduction in its verdict.

Additionally, Defendant contests the reasonableness of Plaintiff's medical bills. It appears Key Health has a motivation for Plaintiff's medical bills to be higher. Under its arrangement with Plaintiff and Key Health's referral physicians, Key Health must preapprove any medical procedure before it fronts the money for that procedure. Key Health then apparently charges Plaintiff the full amount for the medical procedures it approves, but only pays the physician a reduced percentage of that amount. The physician agrees to accept this reduced percentage as full payment. The difference between the smaller amount Key Health pays to the physician and the larger amount Plaintiff eventually pays to Key Health is Key Health's incentive for its relationship with Plaintiff. Thus, the more procedures the Plaintiff undergoes, the more money Key Health stands to make. Consequently, evidence of the arrangement between Plaintiff, Key Health, and Plaintiff's physicians is relevant to the jury's assessment of the reasonableness of Plaintiff's medical treatment and the reasonable value of the medical services provided.[8]

Therefore, evidence regarding Key Health's relationship with Plaintiff and its relationship with Plaintiff's treating physicians is admissible for the above stated purposes. The Plaintiff may request a limiting instruction regarding collateral source payments and the purposes for which it can and cannot be considered consistent with this Order.

---

[8] At the hearing, Plaintiff pointed out that Dr. Karl testified that his treatment of Plaintiff was not affected by his relationship with Key Health. Like any evidence of bias or motivation, Plaintiff can offer this testimony to rebut Defendant's evidence. However, the Court will not exclude evidence of plaintiff's physicians' relationship with Key Health simply because Dr. Karl testified that he was not influenced by it. Rather, the jury should be allowed to weigh this competing evidence.

## CONCLUSION

For the reasons and in the manner set forth above, the Court **GRANTS** Defendant's Motion in Limine, (doc. 34), and **DENIES** Plaintiff's Motion in Limine, (doc. 53).

**SO ORDERED**, this 23rd day of August, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA